UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 21-147(1) (ADM/TNL)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | PLEA AGREEMENT AND |
| v. | ) | SENTENCING STIPULATIONS |
| | ) | |
| SARAH JEAN ELWOOD, | ) | |
| | ) | |
| Defendant. | ) | |

The United States of America and the defendant, SARAH JEAN ELWOOD, agree to resolve this case on the following terms and conditions. This plea agreement binds only the defendant and the United States Attorney's Office for the District of Minnesota; it does not bind any other United States Attorney's Office or any other federal or state agency.

1.     **Charges**. The defendant agrees to plead guilty to Count 5 of the Indictment, and to admit to the relevant offense conduct alleged in Count 2. In exchange, the United States agrees to move to dismiss Counts 1, 2, 3, and 4, as they pertain to the defendant, at the time of sentencing. Count 5 charges the defendant with making false statements during the purchase of firearms, in violation of 18 U.S.C. §§ 922(a)(6) and 924(a)(2).

2.     **Factual Basis**. The defendant agrees to the following facts and further agrees that, were this case to go to trial, the United States would prove the following facts beyond a reasonable doubt:

      a.     From approximately May 2020 through May 2021, the defendant conspired with her co-defendants and others to buy dozens of firearms from federally licensed firearms dealers, while knowingly making false and fictitious oral and written statements that were intended or likely to deceive those dealers regarding a fact material to the lawfulness of the sales. Specifically, the defendant

and others, including her co-defendants, agreed to a scheme through which she would purchase multiple firearms on behalf of others who would provide the funds to buy the guns plus an additional $100 fee for each gun she purchased. In purchasing the firearms, the defendant would knowingly misrepresent to the dealer both orally and in writing that she was the actual purchaser, when in fact she and her co-defendants knew that others were the actual purchasers of the firearms, as arranged by the defendant and her co-defendants. The defendant and her co-defendants straw purchased approximately 97 firearms in total (as listed in Paragraph 9 below), in over 60 transactions, through this agreed-upon arrangement, including about 62 firearms during May 2021 alone.

b. As part of the scheme, on or about May 30, 2021, the defendant and others, including her co-defendants, made arrangements to meet and purchase specific firearms from Bills Gun Shop and Range, a federally licensed firearms dealer within the meaning of United States Code, Title 18, Chapter 44, located in Circle Pines, Anoka County, Minnesota ("Bills"), in exchange for cash, including the $100 premium per firearm, and other items of value. The defendant and others, including her co-defendants, met and traveled together to Bills.

c. When they arrived at Bills, co-defendant Walker and another person went into Bills and looked at and handled various firearms and accessories, including a high-capacity magazine, but did not make any purchases. Co-defendant Walker and the other person then again met with the defendant and co-defendant Jackson outside of Bills. The defendant then entered Bills and as arranged purchased three firearms, namely, an AR-15 semiautomatic pistol, a Ruger 9mm semiautomatic pistol, and a Taurus 9mm semiautomatic pistol, three boxes of ammunition, and a 100-round AR-15 high-capacity magazine. As part of the arrangement and scheme, the defendant filled out the necessary paperwork with the licensed dealer, including the ATF Form 4473, and falsely certified that she was the actual purchaser, when co-defendant Walker and others were in fact the actual purchasers of the firearms and accessories, as arranged by co-defendant Jackson.

d. During a recorded, post-Miranda statement, the defendant admitted that she and co-defendant Jackson had been regularly purchasing firearms for a few months (on an almost daily basis), and had been regularly selling them to others, including co-defendant Walker, for a profit of $100 per firearm. She said that some of the buyers would give her and co-defendant Jackson money up front for the firearms purchases.

e. The defendant stated that she and co-defendant Jackson had known co-defendant Walker for about two months. She admitted that co-defendant Jackson coordinated almost all the meets and sales of the firearms through co-defendant Walker. She explained that because she had a permit to purchase, she made the purchases, and co-defendant Jackson set up the deals.

f.      The defendant stated that co-defendant Walker was her primary customer, having purchased at least 40 to 45 firearms from her and co-defendant Jackson over the last couple of months. She stated that co-defendant Walker would always pay cash for the firearms and that co-defendant Walker told her that he was selling the firearms to other people, but she did not know who. The defendant admitted that she saw co-defendant Walker taking orders over the phone for specific firearms.

g.      The defendant admitted that as part of the usual routine, after co-defendant Jackson made arrangements with co-defendant Walker, they would make the purchases and either put the firearms in the trunk or hold onto them immediately after the purchase. Co-defendant Walker would then direct her and co-defendant Jackson where to drive, and on the drive over, co-defendant Walker would pay for the firearms, including the $100 fee for each firearm. The defendant and co-defendant Jackson usually would then drop off co-defendant Walker at the same intersection they had picked him up.

h.      The defendant explained that based on the arrangement for the afternoon of May 30, co-defendant Walker was going to purchase the Ruger for $500, and the other person was going to purchase the other two firearms for $1,000. When they arrived at Bill's gun shop, co-defendant Walker and the other person went in the store first to select the firearms they wanted and then exited the store. The defendant then entered the store and purchased the firearms, ammunition, and accessories, falsely averring both orally and in writing that she was the actual purchaser when in fact co-defendant Walker and others were the actual purchasers of the firearms, ammunition, and accessories.

i.      The defendant admits and agrees that she acted voluntarily, that she knew she was not the actual lawful purchaser of the firearms, ammunition, and accessories, that she falsely represented both orally and in writing that she was the actual purchaser of the firearms, ammunition, and accessories, and that she knew the scheme of arranged straw purchases and sales of firearms for profit with her co-defendants violated the law.

3.      **Waiver of Pretrial Motions**.  The defendant understands and agrees that she has certain rights to file pretrial motions in this case.  As part of this plea agreement, and based upon the concessions of the United States contained herein, the defendant knowingly, willingly and voluntarily agrees to give up the right to file any additional pretrial motions and to withdraw any pretrial motions she may have already filed.

4.     **Statutory Penalties**.  The parties agree that Count 5 carries the following statutory penalties.

    a.  a maximum term of 10 years' imprisonment, a Class C felony. (18 U.S.C. §§ 922(a)(6), 924(a)(2), and 3559(a)(3));

    b.  a supervised-release term of not more than 3 years. (18 U.S.C. §§ 3559(a)(3) and 3583(b)(2));

    c.  a fine of up to $250,000. (18 U.S.C. §§ 924(a)(2) and 3571(b)(3)); and

    d.  a mandatory special assessment of $100.  (18 U.S.C. § 3013(a)(2)(A)).

5.     **Guidelines Calculations**.  The parties acknowledge the defendant will be sentenced in accordance with Title 18, Chapter 227 (18 U.S.C. §§ 3551 – 3586) and with reference to the advisory United States Sentencing Guidelines.    The parties also acknowledge the Court will consider the United States Sentencing Guidelines in determining the appropriate sentence and stipulate to the following Guidelines calculations.  Notwithstanding the following stipulations, nothing in this plea agreement prevents the parties from bringing to the attention of the Court and the Probation Office all information in their possession regarding the offense(s), including relevant conduct, and the defendant's background.

    a.     **Base Offense Level**. The parties agree that because the offense involved a semiautomatic firearm capable of accepting a large capacity magazine, and the defendant was a prohibited person at the time of the offense, the base offense level is 20.  USSG § 2K2.1(a)(4)(B).

    b.     **Specific Offense Characteristics**. The parties agree that because the offense involved between 25 and 99 firearms, the base offense level is increased by 6 levels.  USSG § 2K2.1(b)(1)(C).  The parties further agree that because the defendant engaged in the trafficking of firearms, the base offense level is further increased by 4 levels.  USSG § 2K2.1(b)(5).  The

parties agree that no other specific offense characteristics or adjustments apply in this case.

c.     **Chapter Three Adjustments**.  The parties agree that, other than as provided for in paragraph d. below for acceptance of responsibility, no other Chapter Three adjustments apply.

d.     **Acceptance of Responsibility**.  The parties agree that if and only if the defendant:  (1) provides full, complete and truthful disclosures to the United States Probation and Pretrial Service Office, including providing complete, accurate and truthful financial information; (2) testifies truthfully during the change-of-plea and sentencing hearings; (3) complies with this agreement; and (4) undertakes no act inconsistent with acceptance of responsibility before the time of sentencing, the United States will recommend that the defendant receive a two-level reduction for acceptance of responsibility under USSG § 3E1.1(a), and will move for an additional one-level reduction under § 3E1.1(b).  The defendant understands that any reduction for acceptance of responsibility shall be determined by the Court in its discretion.

After applying all adjustments, the parties agree that the total adjusted offense level is 27 (20+6+4-3).

e.     **Criminal History Category**.  Based on the facts and circumstances known to the parties, the parties believe that the defendant's criminal history category is I.  This is not a stipulation, but rather a belief based on an assessment of the information currently known to the parties.  The parties agree that the defendant's actual criminal history will be determined by the Court based on the information presented in the Presentence Report and by the arguments made by the parties at the time of sentencing.

f.     **Guidelines Range**.  If the total adjusted offense level is 27, and the criminal history category is I, then the advisory Guidelines range is 70 to 87 months' imprisonment.

The parties acknowledge and agree that if the defendant's total offense level or criminal history category is different than that listed above, the defendant's advisory Guidelines range will be lower or higher than that listed above, and either such circumstance will not provide either party with a basis to withdraw from this plea agreement.

g.   **Fine Range**.  If the total adjusted offense level is 27, the applicable fine range is $25,000 to $250,000.   USSG §§ 5E1.2(c)(3); 21 U.S.C. § 841(b)(1)(A).

h.   **Special Assessments**.  The Guidelines require payment of a special assessment in the amount of $100.00 for each count of conviction, for a total of $100.00.  USSG § 5E1.3.  The defendant understands and agrees that this special assessment is due and payable at sentencing.

i.   **Supervised Release**.  The Guidelines require a term of supervised release of at least 1 year but not more than 3 years.  USSG § 5D1.2(a)(2); 18 U.S.C. § 3583(b)(2).

6.   **Discretion of the Court**.  The foregoing stipulations bind the parties but not the Court.  The parties understand the Sentencing Guidelines are advisory and their application is a matter falling solely within the Court's discretion.  The Court will make its own determination regarding the applicable Guidelines' factors and the defendant's criminal history category.  The Court may also depart from the applicable Guidelines.  If the Court determines the applicable Guidelines calculations or the defendant's criminal history category are different from that stated above, neither party may withdraw from this agreement on that basis, and the defendant will be sentenced pursuant to the Court's determinations.

7.   **Sentencing Recommendation and Departures**.  The parties reserve the right to make departure motions and to oppose any such motions made by the opposing party.  The parties also reserve the right to argue for a sentence outside the applicable Guidelines range.

8.   **Revocation of Supervised Release**.  The defendant understands that if the defendant were to violate any supervised release condition while on supervised release, the

Court could revoke the defendant's supervised release, and the defendant could be sentenced to an additional term of imprisonment up to the statutory maximum set forth in 18 U.S.C. § 3583(e)(3). *See* USSG §§ 7B1.4, 7B1.5. The defendant also understands that as part of any revocation, the Court may include a requirement that the defendant be placed on an additional term of supervised release after imprisonment, as set forth in 18 U.S.C. § 3583(h).

9. **Forfeitures**. The defendant agrees to forfeit to the United States, pursuant to 18 U.S.C. § 924(d)(1) and 28 U.S.C. § 2461(c), any firearm or ammunition involved in the offense conduct described in Count 2 including, but not limited to, the following firearms and associated accessories and ammunition: (1) FMK 9C1 G2 9mm, bearing serial number BTT0628, (2) Ruger LCP 380 Auto, bearing serial number 372294242, (3) Bersa Thunder 380 380 ACP, bearing serial number K05664, (4) Springfield XD9 9mm, bearing serial number AT204930, (5) Walther Arms PPS 9mm, bearing serial number AX9584, (6) Smith & Wesson M&P 15-22 22, bearing serial number DFS1108, (7) Century Arms TP9SF 9mm, bearing serial number 20BH09180, (8) Smith & Wesson Bodyguard 380 Auto, bearing serial number KFU9590, (9) Beretta Nano 9mm, bearing serial number NU164741, (10) Beretta Nano 9mm, bearing serial number NU164738, (11) Smith & Wesson Bodyguard 380 Auto, bearing serial number KHN5379, (12) Taurus G2C 9mm, bearing serial number ABD463393, (13) Smith & Wesson M&P 9 Shield 9mm, bearing serial number JFC3902, (14) Taurus G3C 9mm, bearing serial number ABG711104, (15) SCCY CPX-2 9mm, bearing serial number 951556, (16) Bersa BP9CC 9mm, bearing serial number K23044, (17) Sarsilmaz B6 9mm, bearing serial number

T1102-17E13963, (18) Springfield XD Defender 9mm, bearing serial number BY475673, (19) Taurus Spectrum 380 Auto, bearing serial number 1F033220, (20) Taurus PT111G2A 9mm, bearing serial number ABH838724, (21) Glock 43X 9mm, bearing serial number BPEN020, (22) Taurus Spectrum 380 ACP, bearing serial number 1F024926, (23) Taurus Spectrum 380 Auto, bearing serial number 1F033065, (24) SCCY CPX-2 9mm, bearing serial number 126399, (25) Springfield XDS 9mm, bearing serial number BA181757, (26) Walther Arms CCP 9mm, bearing serial number WK189441, (27) Glock 43 9mm, bearing serial number AFLC219, (28) Taurus G3C 9mm, bearing serial number ACB590615, (29) Springfield XDM Elite 9mm, bearing serial number BA228357, (30) Ruger LCP 380 Auto, bearing serial number 372431109, (31) Ruger Security 9 9mm, bearing serial number 384-29927, (32) Heckler & Koch VP9 Tactical 9mm, bearing serial number 224-316280, (33) Girsan MC28SAT 9mm, bearing serial number T6368-20AV12009, (34) FN 503 9mm, bearing serial number CV016628, (35) Glock 44 22, bearing serial number AFGC876, (36) Ruger EC9S 9mm, bearing serial number 459-15215, (37) Smith & Wesson M&P 9 Shield Plus 9mm, bearing serial number JFY6090, (38) FN Five-Seven 5.7x28, bearing serial number 386402164, (39) Glock 19 9mm, bearing serial number BTNN877, (40) Ruger 5 7 5.7x28, bearing serial number 642-13405, (41) Glock 48 9mm, bearing serial number AFML592, (42) Glock 48 9mm, bearing serial number BSNU334, (43) Glock 41 45, bearing serial number AFLX128, (44) Glock 19 9mm, bearing serial number BTED415, (45) Glock 19 9mm, bearing serial number AFKM784, (46) Springfield Hellcat 9mm, bearing serial number BA241781, (47) Glock 19 9mm, bearing serial number AFMK782, (48) Taurus G2C 9mm, bearing serial number ACD780274, (49) Taurus G2C

9mm, bearing serial number ACD780224, (50) Glock 19 9mm, bearing serial number AFDP856, (51) Glock 26 9mm, bearing serial number AEZU085, (52) Glock 19 9mm, bearing serial number AFDP854, (53) Glock 22 .357 Sig, bearing serial number PTB537, (54) Glock 17 9mm, bearing serial number BTMG955, (55) Ruger 5 7 5.7x28, bearing serial number 642-12901, (56) Taurus G3 9mm, bearing serial number ACD781457, (57) Glock 26 9mm, bearing serial number AEXF244, (58) Glock 27 40, bearing serial number BTSS412, (59) Glock 23 40 S&W, bearing serial number BTHV443, (60) Glock 26 9mm, bearing serial number BSMB786, (61) SCCY CPX-2 9mm, bearing serial number C124715, (62) SCCY CPX-2 9mm, bearing serial number C124587, (63) Glock 19 9mm, bearing serial number BTCV605, (64) Glock 22 40 S&W, bearing serial number BTEN439, (65) Ruger EC9S 9mm, bearing serial number 459-19331, (66) Glock 44 22, bearing serial number AFHY163, (67) Glock 19 9mm, bearing serial number YBT114, (68) Glock 19 9mm, bearing serial number FMC403, (69) Smith & Wesson Shield 9 9mm, bearing serial number JMD3016, (70) Pioneer AK47 Hellpup 7.62x39mm, bearing serial number PAC1149857, (71) Glock 22 40 S&W, bearing serial number BTSF753, (72) Glock 44 22, bearing serial number AFFX088, (73) Glock 22 40 S&W, bearing serial number BTSF754, (74) Glock 43 9mm, bearing serial number ANFL774, (75) Ruger EC9S 9mm, bearing serial number 456-50360, (76) Ruger 5 7 5.7x28, bearing serial number 642-19475, (77) Smith & Wesson M&P Bodyguard 380 Auto, bearing serial number KCL9221, (78) Glock 17 9mm, bearing serial number BTAR800, (79) Glock 23 40 S&W, bearing serial number BTET747, (80) Glock 19 9mm, bearing serial number AFHH020, (81) Glock 19 9mm, bearing serial number BPPB175, (82) Glock 17 9mm, bearing serial number

BTAR803, (83) Glock 43 9mm, bearing serial number AFGL788, (84) Glock 46 9mm, bearing serial number BTAF782, (85) Glock 17 9mm, bearing serial number BTBM124, (86) Glock 19 9mm, bearing serial number AFHH040, (87) Girsan Regard MC 9mm, bearing serial number T6368-20A18050, (88) Springfield XD-9 9mm, bearing serial number BA307871, (89) Glock 30s 45, bearing serial number BSMK362, (90) Glock 27 40, bearing serial number BTAB035, (91) Glock 30 45, bearing serial number BRZM708, (92) Glock 19 9mm, bearing serial number AFNV693, (93) APF AR-15 5.56 NATO, bearing serial number AM002879, (94) Ruger Security 9 9mm, bearing serial number 38453958, (95) Taurus G2C 9mm, bearing serial number 1C046481, (96) 3 boxes of .223-caliber ammunition, (97) a 100-round high-capacity AR-15 magazine, (98) Glock 26 9mm, bearing serial number BTEX477, and (99) Glock 43 9mm, bearing serial number AFRF437.

The defendant agrees that the United States may, at its option, forfeit such property through civil, criminal or administrative proceedings, waives any deadline or statute of limitations for the initiation of any such proceedings, and abandons any interest he may have in the property. The defendant waives all statutory and constitutional defenses to the forfeiture and consents to the destruction of the firearms, ammunition, and associated accessories. The defendant agrees that the firearms, ammunition, and related accessories are subject to forfeiture because they were involved in knowing violations of federal law.

10. **Waiver of Freedom of Information Act and Privacy Act**. In exchange for the concessions of the United States made herein, the defendant agrees to waive all rights to obtain, directly or through others, information about the investigation and prosecution

of this case under the Freedom of Information Act and the Privacy Act of 1974, 5 U.S.C. §§ 552, 552A.

11.     **<u>Waiver of Appeal and Postconviction Petition</u>**.  The parties are expressly aware that Title 18, United States Code, Section 3742, affords them the right to appeal the sentence imposed in this case.   Acknowledging this right, and in exchange for the concessions made as part of this agreement, the parties hereby waive all rights conferred by Title 18, United States Code, Section 3742, to appeal the sentence imposed or the basis of conviction on any ground, <u>except</u> the defendant may appeal the sentence imposed if it is greater than 87 months, and the United States may appeal the sentence imposed if it is less than 70 months.   The defendant also understands her rights to file a collateral postconviction civil petition contesting the legality of her conviction or sentence and, except for a claim of ineffective assistance of counsel, the defendant knowingly and voluntarily waives all rights to contest the defendant's conviction or sentence in any collateral postconviction civil proceeding, including one pursuant to Title 28, United States Code, Section 2255. The defendant has discussed these rights with the defendant's counsel and understands the rights being waived.

12.   **Complete Agreement**.  This, along with any agreement signed by the parties before entry of plea, is the entire agreement and understanding between the United States and the defendant.

Dated:  _DECEMBER 28, 2021_

CHARLES J. KOVATS, JR.
Acting United States Attorney

BY: BENJAMIN BEJAR
Assistant United States Attorney

Dated: _12-28-21_

SARAH JEAN ELWOOD
Defendant

Dated: _12/28/21_

PATRICK G. LEACH, ESQ.
Attorney for Defendant